**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jeffrey Irwin BAKKE (90–1978), Richard Rau (90–1979), Dirck Morris (90–1998), and Frederic Devries (90–1999), Defendants–Appellants.**

Nos. 90–1978, 90–1979, 90–1998 and 90–1999.

United States Court of Appeals, Sixth Circuit.

Submitted May 23, 1991.

Decided Aug. 23, 1991.

Mark V. Courtade, Asst. U.S. Atty. (briefed), Grand Rapids, Mich., for the U.S.

Paul L. Mitchell (briefed), Grand Rapids, Mich., for Jeffrey Irwin Bakke.

Robert N. Swartz (briefed), Grand Rapids, Mich., for Richard Rau.

Timothy R. Newhouse (argued and briefed), Visser & Bolhouse, Grandville, Mich., for Dirck Morris.

Lawrence J. Phelan (argued and briefed), Grand Rapids, Mich., for Frederic Devries.

Before KENNEDY and SUHRHEINRICH, Circuit Judges, and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

Four defendants appeal their convictions, following a joint jury trial, for conspiracy to possess and distribute marijuana. 21 U.S.C. §§ 841 and 846. The indictment contained 26 counts and named other defendants who are not appellants.

The principal issue concerns the district court's admission of evidence that one defendant, Dirck Morris, was arrested and pled guilty to a charge of possessing marijuana subsequent to the time covered by the indictment. Morris contends that admission of evidence of the arrest and surrounding circumstances, including his statements and items seized by the arresting officers, violated Fed.R.Evid. 404(b). The other defendants-appellants argue that they were prejudiced by the "spill-over effect" of this evidence.

All defendants also assert that the district court committed prejudicial error by permitting the government to use "flow charts" as demonstrative evidence. Only Morris argues that he was entitled to a judgment of acquittal on his Rule 29 motion at the close of the case.

## I.

### A.

The indictment charged a conspiracy that ran from about December 1983 through October 1987. The leaders of the conspiracy from early 1984 were John Campau and Douglas Nyhuis. They arranged for the transportation from Florida to Michigan of large quantities of marijuana and then sold the marijuana in Michigan. They employed a group of people who drove automobiles loaded with marijuana from Florida to Michigan. These same drivers, and others, then took money to Florida either by car or plane, and paid the suppliers of the marijuana.

Nyhuis kept detailed records of the drug transactions and the police seized numerous documents during two searches of his home in 1986 and 1987. Nyhuis pled guilty and the seized documents were admitted into evidence during his testimony as a government witness. Nyhuis's records

showed the number of each bale of marijuana that was transported, the weight of each bale when it left Florida and its weight upon receipt in Michigan, the car in which it was transported, and the person to whom it was distributed. These records, and the testimony of government witnesses, implicated all of the appealing defendants in the conspiracy.

## B.

In April 1988, prior to the indictment but subsequent to the period of the conspiracy as alleged in the indictment, New Jersey state police stopped a pickup truck in which Morris was riding on a New Jersey highway. In a search of the truck and occupants, the police found and confiscated $428,000 in cash, numerous documents and a quantity of marijuana, cocaine and diazepam. Morris filed a motion in limine to prevent any testimony concerning the arrest and Morris's pleas of guilty to possession of an illegal drug that followed the arrest. Morris relied on Fed.R.Evid. 404(b), which provides:

> **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Denying the motion in limine, the district court stated:

> The government here has alleged, and I believe shown, that the proposed evidence is probative as to the involvement—not involvement—as to his intent, preparation, plan, identity, absence of mistake or accident, as well as motive and opportunity, which is exactly what the rule talks about. The second question is does the probative value outweigh the prejudicial effect. I believe that the probative value outweighs the prejudicial effect.

The government called one of the New Jersey officers who had arrested Morris as its final witness. Over Morris's renewed objection, the officer testified that he conducted a search of both the truck and Morris. In the truck he found over $428,000 in cash which, according to the witness, neither Morris nor the driver claimed as their own. A police report prepared by another officer, which was not introduced into evidence but was used to refresh the witness's recollection, apparently indicated that the driver stated that the money belonged to him. The officer also testified that he found in Morris's wallet numerous documents with numbers on them that he believed to be narcotics ledgers. He stated that one document contained the notation "Larry."[1] The government also introduced into evidence through this witness its Exhibit 23, which was a photocopy of a page from a personal telephone book found in the truck. The page contained the name and telephone number of Richard Rau, although several of the numbers had been crossed out and apparently corrected with new numbers. The court also admitted at this time Government's Exhibit 43, which Nyhuis had earlier testified was in his handwriting. Exhibit 43 contained the notation "RR," followed by a telephone number, but Nyhuis could not confirm that this referred to Richard Rau's phone number. In an effort to link the New Jersey arrest circumstantially with the charged conspiracy, the officer testified that the phone number on Exhibit 43 was the same as the one that appeared on Exhibit 23.

The witness also stated that Morris told him the money represented part of the proceeds from a sale of 465 pounds of marijuana and that he and the driver were returning to New Jersey to pay the supplier of this marijuana. Morris also stated, according to the witness, that he and the

---

1. The officer testified only to the appearance of the name "Larry," and the document(s) apparently were not introduced into evidence. Prior testimony had indicated that Morris was once associated with a person named Larry Secrist and that Secrist had supplied marijuana for Nyhuis, but there is no indication in the testimony that these associations or transactions occurred during the indictment period.

driver intended to go on to Michigan with 200 pounds of marijuana.

Following this testimony, the district court gave an instruction limiting the scope of the jury's use of the trooper's testimony. The court stated that the evidence of the arrest and the money was only being offered against defendant Morris and was not to be used as evidence again the other defendants. The court also stated:

> Evidence that he may have committed an act at one time or on one occasion is not admissible to prove the character of him in order to show that he acted in conformity therewith on the occasion in the indictment. However, you as a jury may consider evidence as to the alleged subsequent act—this occurred after the period in the indictment, in 1988—you may consider evidence as to the alleged subsequent act of a like nature as evidence of his state of mind, his knowledge, or intent with which the accused did the act contained in the indictment, and it may be considered as evidence of any common plan or scheme of the defendant.
>
> Therefore, you may consider it for one purpose but not for the other purpose as I have just told you....

### C.

Six defendants, including the four appellants in this case, were tried together. The government presented the testimony of both indicted and unindicted co-conspirators. Because of the complexity of the conspiracy, the government also prepared and used a series of seven charts designed to assist the jury in sorting out the various marijuana transactions. The proffered exhibits included one chart each for the calendar years 1984, 1985, and 1986, two charts detailing specific transactions in December 1986 and the summer of 1987, a general flow chart entitled "Typical Scenario," and a map of Florida. The "Typical Scenario" chart consisted of a map of the eastern third of the United States and on it were arrows showing the flow of marijuana between "supplier," "load car driver," "retailers," and Nyhuis. Other charts more specifically depicted the various transactions

between co-conspirators by lines drawn between their names. The district court initially required the government to remove green marijuana leaves and gold police shields from the charts, which it viewed as prejudicial. The court permitted the government to use the "sanitized" charts as demonstrative evidence throughout the trial. The government also employed the charts during trial by asking various co-conspirators, following their testimony, to initial the transactions depicted on the chart in which they had testified they were involved. The district court denied the government's request to admit the charts into evidence.

### II.

Morris contends that the only question presented to the jury by the indictment and his not guilty plea was whether he was a member of the Campau–Nyhuis conspiracy. He argues that none of the purposes for which Rule 404(b) permits the admission of "other crimes" evidence was present in this case. The records seized from Nyhuis and his testimony, as well as that of Phyllis Moore, a co-conspirator, indicated that Morris had sold marijuana to the Nyhuis ring in 1985 and 1986, but he was not identified as a driver or handler of marijuana as it was transported from Florida to Michigan, nor as one who returned money to Florida. Thus, he maintains, the fact that he was arrested in New Jersey in 1988 with records of unrelated drug transactions and proceeds from the sale of marijuana has no relevance to the charge of membership in the conspiracy between 1983 and 1987. Therefore, he argues that admission of this evidence violated Rule 404(b) and was highly prejudicial. Because none of the reasons for admission given by the district court related to any issue in the case, the only message this evidence sent to the jury was that since Morris was dealing in marijuana in New Jersey in 1988, he most likely was part of the 1983–87 conspiracy that purchased marijuana in Florida and distributed it in Michigan. In other words, it showed that Morris was a person of bad character and permitted the jury to infer from this

that he was guilty of the conspiracy charge on which he was being tried.

The government responds that the evidence concerning Morris's 1988 arrest was admissible on two distinct and unrelated bases. First, it contends that the evidence was admissible "as circumstantial evidence of his involvement in the charged conspiracy...." The government does not spell out its "circumstantial evidence" theory fully, but cites several cases that it claims support such a basis for admitting "other crimes" evidence. We will deal with this argument after our discussion of the more fully developed Rule 404(b) issue.

The government next argues that the evidence was admissible under Rule 404(b) to prove preparation, plan, identity, motive, opportunity and absence of mistake or accident. According to the government this evidence was "highly probative" of Morris's knowledge and plan and of his association with an unindicted co-conspirator, Larry Secrist. The evidence did not relate to Morris's character, the government maintains, but threw light on his "training, experience and ability." The argument appears to be that Morris's involvement in a large marijuana transaction in New Jersey in 1988 tends to prove that he had earlier training and experience in such affairs and thus developed the ability to carry them out. Since he was shown to have had some contacts with the Nyhuis marijuana activities in Michigan during the period of the conspiracy, the jury could infer that this was where he acquired the training, experience and ability to engage in the later transaction.

### III.

Article IV of the Federal Rules of Evidence is styled "Relevancy And Its Limits." After defining "relevant evidence" and stating general rules of admissibility, Article IV then prescribes rules for the admission and exclusion of particular categories of evidence. The Supreme Court has stated that "Rules 404 through 412 address specific types of evidence that have generated problems." *Huddleston v. United States*, 485 U.S. 681, 687, 108 S.Ct. 1496, 1500, 99 L.Ed.2d 771 (1988). Of these, probably none has generated more problems than "other crimes" evidence, which is controlled by Rule 404(b). This is a rule of inclusion, not one of exclusion. *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir.1985). It does not "flatly prohibit the introduction of such evidence but instead limit[s] the purpose for which it may be introduced." *Huddleston*, 485 U.S. at 687, 108 S.Ct. at 1500.

When the introduction of particular evidence is objected to under Rule 404(b), the first issue for the trial court is one of relevancy. "Evidence is admissible under Rule 404(b) only if it is relevant. 'Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.'" *Id.* at 689, 108 S.Ct. at 1500 (quoting Advisory Committee's Notes on Fed.Rule Evid. 401, 28 U.S.C.App., p. 688).

Four requirements serve to protect against unfair prejudice from the admission of "other crimes" evidence. They are: (1) the relevancy requirement; (2) Rule 404(b)'s requirement that the evidence be offered for a "proper purpose;" (3) Rule 403's [2] requirement that the court determine that the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the requirement that, upon request, the trial court must give a limiting instruction on the purpose for which it is admitted. *Huddleston*, 485 U.S. at 691, 108 S.Ct. at 1502. The list contained in Rule 404(b) is not exhaustive; evidence may be admitted for additional similar purposes. *United States v. Mendez–Ortiz*, 810 F.2d 76, 79 (6th Cir.

---

**2.** FED.R.EVID. 403 provides:

Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

1986) *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987); *Blankenship, supra,* 775 F.2d at 739.

This court has construed the relevancy requirement to exact a showing by the proponent of the other crimes evidence that the tendered evidence relates to a matter that is "in issue" in the case on trial. *Blankenship, ibid; United States v. Zelinka,* 862 F.2d 92, 98 (6th Cir.1988). In *Zelinka* we held that a not guilty plea to a charge of conspiracy to possess and distribute cocaine did not place in issue a question of motive or satisfy any of the other purposes for which Rule 404(b) makes other crimes evidence admissible. 862 F.2d at 99.

The facts in *Zelinka* were remarkably like those in the present case. The defendant was charged with being a member of a conspiracy to distribute illegal drugs and pled not guilty. He was arrested approximately 17 months after the date on which the indictment alleged that the conspiracy ended. The government sought to introduce evidence that Zelinka had cocaine and small clear plastic bags in his possession when arrested. Counsel objected to introduction of this evidence on Rule 404(b) grounds, arguing that the evidence was not relevant to the charges in the indictment. Unlike the judge in the present case, the trial judge in *Zelinka* did not conduct a Rule 404(b) analysis. Nevertheless, he permitted the evidence to be introduced as part of the "res gestae." *Id.* at 94.

In reversing Zelinka's conviction, we stated:

> The district court abused its discretion by admitting the evidence in question without requiring the prosecutor to show its relevance and the necessity for its admission. See *United States v. De-Vaughn,* 601 F.2d 42, 45 (2d Cir.1979). Even if the evidence indicated that Zelinka possessed cocaine for the purpose of distribution in December 1986, it was not admissible to prove that he had participated in a conspiracy to distribute cocaine that ended in July 1985. The evidence related to a time that was remote

from the period of the conspiracy and involved none of the other conspirators. *Blankenship,* 775 F.2d at 739. This evidence failed the "threshold inquiry"—it was not "probative of a material issue other than character." *Huddleston,* 108 S.Ct. at 1499. On the other hand, it strongly suggested that, as one handling an illegal drug at the time of his arrest, Zelinka had probably acted in conformity with the character of a drug dealer seventeen months earlier. This is precisely the use for which such evidence may not be admitted under Rule 404(b).

*Id.* at 99.

Standing alone, Exhibits 23 and 43 were not evidence of other crimes. Thus, divorced from the arresting officer's testimony concerning the arrest in New Jersey and events surrounding that arrest, these exhibits arguably could have been admitted for the purpose of connecting Morris with Richard Rau. Applying the holdings of *Huddleston, Blankenship* and *Zelinka,* however, we conclude that it was prejudicial error to admit the testimony of the officer, with its evidence of another crime, and the accompanying exhibits.[3]

## IV.

### A.

■ The disputed evidence fails the first test of relevancy. There was no evidence that Morris was employed by the conspirators as a driver who brought marijuana from Florida to Michigan or as a courier who took money to Florida to pay for such marijuana. The evidence showed that Morris sold 100 to 200 pounds of marijuana to Nyhuis at one time in 1985 or 1986. This transaction took place in the vicinity of Grand Rapids, Michigan. Nyhuis said he might have approached Morris to make this purchase—he just could not remember the details. Although Nyhuis described it as Jamaican marijuana, he said nothing about it coming from Florida or how Morris had acquired the weed. The witness could provide no details of this transaction and there

---

**3.** As indicated, the exhibits themselves are not subject to a Rule 404(b) objection, and would be admissible for other purposes at a subsequent trial.

is no indication that the marijuana sale that produced the money found in the pickup truck in New Jersey resulted from a scheme similar to that described in the indictment.

Although the district court followed the analysis prescribed by the Supreme Court in *Huddleston* and by this court in *Blankenship*, we find that the determination of relevancy was erroneous. The government failed to prove any relationship between the evidence concerning the 1988 New Jersey arrest and "a matter properly provable in the case." *Huddleston*, 485 U.S. at 689, 108 S.Ct. at 1501. The "properly provable matter" was confined to Morris's alleged membership in the Campau–Nyhuis conspiracy. The fact that he was arrested in a distant state some six months after the end of the charged conspiracy and incriminated himself in a totally unrelated drug transaction only demonstrated that he was a drug dealer in 1988. It did not demonstrate or tend to show, as claimed by the government, that he must have "learned the ropes" of the marijuana trade by participating in the earlier Campau–Nyhuis conspiracy. Yet, this was the only basis upon which the government argued that the evidence was admissible. Any such conclusion would be mere speculation. Nothing connected the events culminating in his 1988 New Jersey arrest with his, or any other alleged co-conspirator's, involvement in the Florida to Michigan 1983–87 conspiracy charged in the indictment.

We do not hold or imply, either here or in *Zelinka*, that the government can never introduce other crimes evidence until the defendant affirmatively relies on a defense that raises an issue such as those listed in Rule 404(b). There are cases in which it is clear to the district court that the jury must make a determination on such questions as the existence of motive, opportunity, intent, or identity in order to decide the case. When this is so, the existence of that fact is "in issue" because it is an element of the offense that the government must prove. For example, intent is an element required to be proven in most criminal prosecutions, and thus, the government should be permitted to offer evidence that

tends to prove intent during its case in chief. If the evidence satisfies the requirements of Rule 404(b) and Rules 402 (relevancy) and 403 (probative value versus danger of unfair prejudice), it is admissible even though the defendant has not pled or otherwise indicated a reliance on lack of intent as a defense. See *United States v. Juarez*, 561 F.2d 65, 73 (7th Cir.1977); *United States v. Adcock*, 558 F.2d 397, 402 (8th Cir.), *cert. denied*, 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977). Likewise, when identity is clearly an issue in a case, the trial court may admit evidence during the government's case in chief that discloses a different crime similar to the one charged in which a distinctive modus operandi was employed. See *United States v. Danzey*, 594 F.2d 905, 911–13 (2d Cir.), *cert. denied sub nom.* *Gore v. United States*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979).

In the present case, neither intent, knowledge, nor any similar question was likely to become, or did become, a contested issue. Morris took the position that proof of the one transaction in which he sold marijuana to Nyhuis, and his acquaintance with one of the other conspirators, did not establish beyond a reasonable doubt that he was a member of the conspiracy charged in the indictment. We believe this is a case where the other crimes evidence had "no logical tendency" to connect Morris with the conspiracy to transport marijuana from Florida to Michigan for sale there. *United States v. Ailstock*, 546 F.2d 1285, 1290 (6th Cir.1976).

**B.**

The government also argues that the other crimes evidence is admissible as circumstantial evidence of Morris's complicity in the charged conspiracy, "totally aside" from the requirements of Rule 404(b). This is a novel proposition which, if accepted, would render the rule meaningless. All of the evidence to which Rule 404(b) applies, i.e., evidence of other crimes or wrongs, is in the nature of circumstantial evidence that the defendant committed the charged offense. The cases cited by

the government simply do not support its argument.

In *United States v. Bagaric*, 706 F.2d 42 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983), the district court admitted evidence seized at the time of the defendant's arrest after the charged conspiracy had ended. The court of appeals affirmed upon finding that the evidence was relevant to prove the existence of the conspiracy and the defendant's participation. The basis for holding that Rule 404(b) did not control, however, was not that the evidence provided circumstantial support for the charged conspiracy. Rather the reason its admission was not controlled by Rule 404(b) was that possession of the seized materials was not a crime and Rule 404(b) applies only to evidence of other crimes or wrongs. In the present case, on the other hand, the evidence introduced by the New Jersey officer clearly related to another criminal act of the defendant. *Bagaric* does not apply here.

The Court of Appeals for the Eighth Circuit followed *Bagaric* in *United States v. DeLuna*, 763 F.2d 897 (8th Cir.), *cert. denied sub nom. Thomas v. United States*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). Again, the government misconstrues the court's holding. In *DeLuna* the court applied *Bagaric* to approve admission of evidence that it found not to be covered by Rule 404(b). In doing so, the court held that some of the disputed evidence was part of the charged conspiracy and thus not evidence of *other* crimes or wrongs, that some of it was evidence of other crimes or wrongs of a person not charged in the case being tried, or, as in *Bagaric*, that the disputed evidence was not in itself evidence of a crime or wrong. *Id.* at 913–17.

In *United States v. DeClue*, 899 F.2d 1465 (6th Cir.1990), a defendant charged with evading his personal income taxes for 1977 testified that a payment to him as reflected on a Form 1099 was actually income of a corporation that he controlled and that it had been reported on the corporation's tax return for 1978. The trial court permitted the government to impeach this testimony by showing that the corporation did not file an income tax return for 1978. We affirmed the district court upon concluding that the evidence was not offered to prove character, but rather to impeach the testimony of a testifying defendant.

The admissibility ruling in the present case · is clearly controlled by Rule 404(b).

## V.

The other claims of error require little discussion.

### A.

■ The defendants DeVries, Bakke, and Rau argue that they were prejudiced by admission of the evidence surrounding Morris's 1988 New Jersey arrest. We have stated that "[a] general rule in conspiracy cases is that persons jointly indicted should be tried together." *United States v. Robinson*, 707 F.2d 872, 879 (6th Cir.1983). Although these defendants joined with Morris in objecting to the evidence, none of them made a motion to sever their cases from Morris's. We do not believe the evidence in dispute had sufficient likelihood of prejudicing these defendants to require the district court to sever on its own motion under Fed.R.Crim.P. 14.[4]

Although the district court erred in admitting the questioned evidence, only Morris was prejudiced. The court carefully instructed the jury when the evidence was admitted of the limited purpose for which it was to be considered; that it should be considered only in determining Morris's guilt or innocence.

These defendants' reliance on *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), is misplaced. In that case the Supreme Court found that

---

**4.** Rule 14 states, as pertinent here:

   If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information …

the court may order an election or separate trial of counts, grant a severance of defendants or provide whatever other relief justice requires. Fed.R.Crim.P. 14.

evidence of uncharged separate conspiracies, involving other defendants, had been admitted against the petitioner. Rather than limiting the consideration of the evidence to a determination of the guilt or innocence of the other defendants, the trial court instructed the jury that evidence of the statements and acts of any defendant found to be a conspirator could be considered against all the defendants. Under these circumstances, the Supreme Court found that it could not conclude that the jury properly limited its consideration of the extrinsic evidence. Our present case in no way resembles *Kotteakos*.

## B.

Morris also contends that the district court erred in denying his Rule 29 motion for acquittal. He argues that evidence of his sale of Jamaican marijuana to Nyhuis in Grand Rapids related to a separate conspiracy, not to the conspiracy charged in the indictment. Further, he asserts that there was insufficient evidence of his complicity in the charged conspiracy to support his conviction. We disagree with both contentions.

■ Viewing the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), we find that the government's proof (excluding proof of the New Jersey arrest) amply supported the conclusion that all defendants were involved in a single conspiracy to distribute marijuana, as charged in the indictment. There was sufficient evidence concerning Morris's dealings with Nyhuis and Phyllis Moore to support a finding that Morris was a member of the charged conspiracy. As we stated in *United States v. Warner*, 690 F.2d 545, 549 (6th Cir.1982), "a single conspiracy does not become multiple conspiracies simply because each member of the conspiracy did not know every other member, or because each member did not know of or become involved in all of the activities in furtherance of the conspiracy." See also *United States v. Rios*, 842 F.2d 868, 872 (6th Cir.1988), *cert. denied*, 488 U.S. 1031,

109 S.Ct. 840, 102 L.Ed.2d 972 (1989), where we stated:

> [w]hether single or multiple conspiracies have been shown is usually a question of fact to be resolved by the jury under proper instructions and to be considered on appeal in the light most favorable to the government. Even if there is a 'variance' in the proofs showing multiple conspiracies rather than a single conspiracy, reversal is required only where substantial rights of the appellants are involved. *United States v. Grunsfeld*, 558 F.2d 1231, 1238 (6th Cir.), *cert. denied sub nom. Flowers v. United States*, 434 U.S. 872, 98 S.Ct. 219, 54 L.Ed.2d 152 (1977) (citations omitted).

The district court instructed the jury on the effect of a possible finding that the proof showed several conspiracies rather than a single one, as charged in the indictment. This portion of the charge concluded:

> If you find that a particular defendant is a member of another conspiracy, not the one charged in the indictment, then you must acquit that defendant. In other words, to find a defendant guilty, you must find that he was a member of the conspiracy charged in the indictment and not some other, separate conspiracy.

The fact that Morris was not shown to have taken part in the transportation of marijuana from Florida is not determinative. The ultimate purpose of the conspiracy was to distribute marijuana in Michigan and there was proof that Morris engaged in this activity. If believed by the jury, the evidence of his dealings with Nyhuis and Moore was sufficient to support a conviction and, thus, it required the district court to deny Morris's motion for acquittal.

## C.

■ Counsel for the defendants objected to the government's use of the seven charts previously described as demonstrative exhibits. Although the district court overruled the objections, it refused to admit the charts into evidence and instructed the jury that the charts were not independent evidence and were "no better than the

testimony or documents on which they are based."

As we pointed out in a recent decision, both the Federal Rules of Evidence and "the established tradition" of this court permit the introduction of charts and exhibits that summarize the evidence as an aid to the jury. See *United States v. Fernandez*, 935 F.2d 739, 753 (6th Cir.1991). The court also stated that "[s]uch a summary should be accompanied by a limiting instruction which informs the jury of the summary's purpose and that it does not constitute evidence." *Id.*

We find no abuse of discretion in the district court's decision to permit use of the charts for the restricted purpose permitted by our earlier decisions, particularly in view of the contemporaneous limiting instruction.

## CONCLUSION

The convictions of Bakke, Rau and DeVries are affirmed. The conviction of Morris is reversed for a new trial.