**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph Paul FRANKS, Defendant–**
**Appellant.**

No. 02–4085.

United States Court of Appeals,
Sixth Circuit.

May 27, 2004.

484

David P. Folmar, Jr., Asst. U.S. Attorney, Cleveland, OH, for Plaintiff–Appellee.

Daniel N. Jabe, Jones Day, Columbus, OH, Ivan C. Smith, III, Marysville, OH, for Defendant–Appellant.

Before MARTIN and ROGERS, Circuit Judges, and BELL, District Judge.*

ROGERS, Circuit Judge.

While investigating Terry Gardner for cocaine trafficking, agents of the Federal Bureau of Investigation (the "FBI") taped telephone conversations between Gardner and another man, a number of which ostensibly concerned the sale of Tire Wet, car wax, and air freshener. After his arrest, Gardner identified the other party as Joseph Franks, the defendant/appellant. Gardner claimed that he regularly distributed cocaine to Franks, and he explained that Tire Wet, car wax, and air freshener were code words for cocaine. A jury convicted Franks of conspiracy to distribute cocaine and of the use of a communications facility to facilitate a drug conspiracy. Franks appeals, raising a number of issues including his "career offender" status for purposes of sentencing, the admission of evidence seized months after the end of the alleged conspiracy, alleged prosecutorial misconduct during closing argument, and the sufficiency of the evidence for the conspiracy claim. We affirm Franks's conviction, but we vacate his sentence and remand for resentencing.

## BACKGROUND

In late 1998 or early 1999, the FBI initiated an investigation of a cocaine-distribution ring involving Terry Gardner. Gardner, the FBI learned, bought cocaine from Anthony Goodman in California and resold the drugs to various individuals in Cleveland, Ohio. Gardner purchased cocaine in the amount of two to four kilograms once or twice a month. He then broke the cocaine down into eighth-kilogram quantities for resale. His customers—primarily four individuals—further broke down the drugs before reselling them. A courier named Darlene Brunn would pick up the drugs in California and fly back to Cleveland. Additionally, on several occasions, Goodman transported drugs to Cleveland via automobile.

As part of its investigation, the FBI installed a wiretap on Gardner's phone in December 1999. Agents recorded 14 telephone conversations between Gardner and an unidentified man, including a number of calls concerning the purchase of Tire Wet, car wax, and air freshener. For example, in one call, Gardner stated that he had

---

* The Honorable Robert Holmes Bell, United States Chief District Judge for the Western District of Michigan, sitting by designation.

"eight gallons of wax and maybe another eight gallons of Tire Wet," which the other party agreed to purchase. In another call, Gardner arranged the sale to the other party of "gallons of air freshener" in cherry, lemon, banana, and apple scents.

The FBI arrested Gardner in July 2000. Gardner identified Franks as the other party to the taped conversations, and Gardner revealed that he distributed cocaine to Franks for a period of 12 to 18 months in 1999 and 2000. He reported that Franks was one of his primary customers and that Franks purchased cocaine in quantities ranging from a half kilogram to two kilograms at a time. He claimed to have sold Gardner a total of 15 kilograms of cocaine in approximately 15 transactions during their relationship. Finally, he explained that, in their telephone conversations, he and Franks used Tire Wet, car wax, and air freshener as code words for cocaine.

On February 14, 2001, the Government filed a Superseding Indictment charging Franks with conspiracy to distribute cocaine. On February 21, 2001, agents arrested Franks at his residence, and Franks consented to a search of the premises. In an upstairs room, agents retrieved a gun and a little packet of marijuana from the drawer of a nightstand. In the basement, agents recovered a scale and a cardboard box top from behind a television set. Franks's fingerprint was found on a battery in the scale and on the box top. The box top contained cocaine residue in the amount of one hundredth of a gram (.01 grams), as did the scale.

Agent Kenneth Riolo of the FBI interviewed Franks at the federal building. According to Agent Riolo,

[Franks] admitted that he had dealt with Terry Gardner and that Terry would contact him whenever Terry was in possession of product, and that they would agree to meet, and he—you know, Joe would have an idea of what kind of quantity was available to him, and they would meet either at [Gardner's] pager store or at [Franks's] car wash.

He also said that he owned a car wash on 143rd and Harvard and that he had lived on Invermere for approximately 20 years, that he had dealt with Gardner for about a year.

Also according to Agent Riolo, Franks "said a couple of times that he knew that dealing with Gardner was wrong, but he continued to do it."

On February 6, 2002, a grand jury returned a Second Superseding Indictment charging Franks with one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), ten counts of using a communications facility to facilitate a drug conspiracy in violation of 21 U.S.C. § 843(b), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Franks waived his right to a jury trial with respect to the felon in possession charge.

At the jury trial, defense counsel argued that Franks's dealings with Gardner related solely to the automobile business. Franks had operated a car wash since 1997, and Gardner sold tires, rims, and automotive accessories at his pager store. Franks, who also sold cars, once attempted to help Gardner's son obtain a car title and, on another occasion, purchased a set of tire rims from Gardner. Gardner periodically had his car washed at Franks's car wash. Lynzell Hereford, a former employee of Franks, testified that Gardner delivered four bottles of Tire Wet and four bottles of car wax to Franks's business in late 1999. Ricardo Williams, a friend of Franks, testified that he and Franks visited Gardner's pager store in December, 1999, in order to purchase a customized license plate and that, at the store, Gard-

ner told Franks that he could obtain Tire Wet and air freshener for a cheap price. This evidence, defense counsel contended, demonstrated that Franks and Gardner engaged in only legitimate business and that the calls between Franks and Gardner actually concerned Tire Wet, car wax, and air freshener.[1]

At the close of the Government's case, Franks moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the Government had not adduced sufficient evidence for the jury to conclude that Franks had joined any conspiracy. He argued that the evidence proved, at most, that Franks was an "end-user," stressing that Franks dealt only with Gardner and did not know any other members of the alleged conspiracy. The Government responded that Franks participated in "a typical chain-type conspiracy." The district court denied the motion, concluding that the evidence that Gardner regularly distributed cocaine to Franks allowed the jury to conclude that Franks "was not simply a street buyer, but knew of an ongoing conspiracy in which he was involved." At the close of the evidence, Franks again moved for a judgment of acquittal, and the district court again denied the motion.

The jury convicted Franks of conspiracy to distribute cocaine and of four counts of using a communications facility to facilitate a drug conspiracy, but acquitted Franks of the remaining six counts of using a communications facility to facilitate a drug conspiracy and found Franks responsible for less than 500 grams of cocaine.[2] The district court found Franks guilty of the felon in possession charge. The court sen-

tenced Franks to a term of 262 months for the conspiracy conviction, a term of 48 months for each use-of-communications-facility conviction to run concurrent with each other and with the sentence for the conspiracy conviction, and a term of 120 months for the felon-in-possession conviction to run concurrent with the other sentences. Franks timely appealed.

## ANALYSIS

### 1. "Career Offender" Sentencing Enhancement

The district court erred in sentencing Franks as a "career offender." Section 4B1.1 of the Sentencing Guidelines enhances the sentences of "career offenders." A defendant qualifies as a career offender if (1) he was at least eighteen years old at the time he committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) he has at least two prior felony convictions of either a crime of violence or a controlled substance offense. United States Sentencing Commission, *Guidelines Manual*, § 4B1.1(a) (Nov. 2001).

The Guidelines define "a controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or

---

1. Gardner testified that he did not sell automotive cleaning products at his pager store and that he never sold Tire Wet, car wax, or air freshener to Franks. Agent Riolo testified that there was no evidence of Tire Wet or car wax in the records at Gardner's store.

2. The indictment charged Franks with conspiring to distribute 5 or more kilograms of cocaine.

dispense." USSG § 4B1.2(b). "Simple possession is not a controlled substance offense under the Sentencing Guidelines." *United States v. Hernandez,* 218 F.3d 272, 278 (3d Cir.2000); *see also United States v. Neal,* 27 F.3d 90, 92 (4th Cir.1994) ("[S]imple possession of drugs is excluded from the category 'controlled substance offense.' ").

The Presentence Investigation Report recommended the application of the career offender enhancement based, in relevant part, on Franks's prior convictions for Possession of Cocaine in violation of Ohio Revised Code § 2925.11 and for Possession of Cocaine Equal to or Exceeding Three Times the Bulk Amount in violation of Ohio Revised Code § 2925.03. Franks did not object to this recommendation, and the district court imposed the enhancement.

As the parties now agree, the district court erred in applying the enhancement because Franks's conviction under Ohio Revised Code § 2925.11 does not constitute a "drug possession offense" and, hence, Franks does not have "two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). Section 2925.11, titled "Drug Possession Offenses," reads, "No person shall knowingly obtain, possess, or use a controlled substance." Ohio Rev. Code § 2925.11(a) (West 2004). The statute does not include an element of "manufacture, import, export, distribution, or dispensing." USSG § 4B1.2(b). As this court has previously remarked, Section 2925.11 is a "[s]imple possession" offense "aimed at users and not at sellers." *Gibbs v. United States,* 3 Fed.Appx. 404, 406 (6th Cir.2001) (citing *State v. Goodnight,* 52 Ohio App.2d 333, 370 N.E.2d 486, 488 (1977)).

Because, as the parties concur, Franks's conviction under § 2925.11 does not constitute a "crime of violence" or a "controlled substance offense," and because the parties agree that Franks should be resentenced notwithstanding his failure to object to the imposition of the enhancement, we remand for resentencing.

*2. Admission of the Scale, Cocaine Residue, and the Firearm Seized from Franks's Residence*

■ The district court did not plainly err in admitting the scale, cocaine residue, and firearm seized from Franks's residence. On appeal,[3] Franks argues that these items constitute highly prejudicial character evidence which the district court should have excluded under Federal Rule of Evidence 404(b). *See* Fed.R.Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). Franks insists that the items did not represent direct evidence of the charged conspiracy, given that agents seized the items "long after the end of the alleged conspiracy"—in February 2001, approximately seven months after Gardner's arrest in July 2000 and approximately eight months after Gardner's last alleged sale of cocaine to Franks in June 2000—and given "the complete absence of any evidence connecting these items to the conspiracy."

The district court's admission of the evidence in question does not qualify as plain error. Notwithstanding the eight-month gap between Franks's last purchase of cocaine and the seizure of the evidence, the district court reasonably viewed the scale, the cocaine residue, and the gun as evidence of the charged conspiracy rather than evidence of some other, unidentified

---

**3.** Franks concedes that, given his failure to object to the admission of this evidence at trial, the plain error standard applies to his claim.

"wrong." In the absence of any objection from Franks, and in the absence of any evidence that Franks engaged in any drug trafficking apart from the charged conspiracy, the district court evidently concluded that the Government introduced the gun and the scale as tools used by Franks in distributing the cocaine purchased from Franks. Franks stresses that "the government presented absolutely no information about the seized items other than the mere fact that they were in [his] home on February 21, 2002." However, any error in the district court's failure to require additional evidence connecting the scale and the gun to the conspiracy hardly rises to the level of plain error. As we said in *United States v. Cox*, 957 F.2d 264 (6th Cir.1992), "[r]ecourse may be had to the [plain error] doctrine only on appeal from a trial infected with error so plain that trial judge and prosecutor were derelict in countenancing it." *Id.* at 267 (internal quotation omitted).

Franks cites inapposite cases for the proposition that "it is improper to admit [ ] drug evidence seized from a defendant months after the end of the alleged conspiracy to prove the defendant's participation in the conspiracy where the government fails to show any connection between the evidence and the conspiracy." In *United States v. Zelinka*, 862 F.2d 92 (6th Cir.1988), this court held that the district court erred in admitting testimony describing cocaine and plastics bags recovered from the defendant approximately a year and a half after the end of an alleged conspiracy to distribute cocaine. *Id.* at 93. The court explained,

> Even if the evidence indicated that [the defendant] possessed cocaine for the purpose of distribution in December 1986, it was not admissible to prove that he had participated in a conspiracy to distribute cocaine that ended in July

1985. The evidence related to a time that was remote from the period of the conspiracy and involved none of the other conspirators.

*Id.* at 99.

Similarly, in *United States v. Bakke*, 942 F.2d 977 (6th Cir.1991), this court held that the district court erred in admitting testimony that the defendant was caught with $428,000 in proceeds from the sale of marijuana approximately six months after the end of an alleged conspiracy to distribute marijuana. *Id.* at 978–79. This court noted that the charged conspiracy involved the transportation of marijuana from Florida to Michigan for sale, that the defendant's alleged role in this conspiracy was limited to a single sale of drugs to his alleged co-conspirators in Michigan (as opposed to the delivery of marijuana to Michigan), and that the defendant was caught in New Jersey with the drug proceeds. *Id.* at 982. The court explained,

> The fact that [the defendant] was arrested in a distant state some six months after the end of the charged conspiracy and incriminated himself in a totally unrelated drug transaction only demonstrated that he was a drug dealer in 1988.... Nothing connected the events culminating in his 1988 New Jersey arrest with his, or any other alleged co-conspirator's, involvement in the Florida to Michigan 1983–87 conspiracy charged in the indictment.

*Id.* at 983. In short, the court concluded that "the other crimes evidence had 'no logical tendency' to connect [the defendant] with the conspiracy to transport marijuana from Florida to Michigan for sale there." *Id.*

Neither decision requires the reversal of Franks's conviction. First, in both *Zelinka* and *Bakke*, the defendants objected to the admission of the evidence in the dis-

trict court. *Bakke,* 942 F.2d at 979; *Zelinka,* 862 F.2d at 94. Second, in both *Zelinka* and *Bakke,* unlike in the case at bar, the challenged evidence plainly related to "bad acts" other than the charged conspiracy. In *Zelinka,* the defendant was found with a half gram of cocaine and plastic bags a year and a half after the end of the alleged conspiracy. 862 F.2d at 93. In *Bakke,* the evidence in question concerned drug trafficking activity (the purchase of marijuana in New Jersey) that clearly was unrelated to his involvement in the charged conspiracy (selling marijuana to his alleged co-conspirators in Michigan years earlier). 942 F.2d at 982–83. Here, the challenged evidence—the scale, the gun, and cocaine "residue" (.02 grams)— appears to relate to the charged conspiracy rather than some unidentified "other act."

Finally, it is difficult to conclude that any error affected Franks's substantial rights given the Government's closing argument that there was "no evidence" that Franks received any drugs after Gardner's arrest. To establish plain error, a defendant must show, *inter alia,* that the error affected his substantial rights. *United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir.1998) Presumably, when Franks claims that the items are evidence of "other acts," he means that the items are evidence of Franks's post-conspiracy distribution of cocaine. But, in light of the Government's disavowal, it is speculative to say that the jury believed that the evidence related to post-conspiracy activity rather than to the conspiracy itself.

## 3. *Prosecutorial Misconduct*

On appeal, Franks raises a number of allegations of prosecutorial misconduct. However, Franks failed to object to the prosecutor's allegedly improper statements, and the district court did not commit plain error by failing to address the prosecutor's conduct *sua sponte.*

### a. *Legal Background*

"When reviewing claims of prosecutorial misconduct, we determine first whether the statements were improper." *United States v. Tarwater,* 308 F.3d 494, 511 (6th Cir.2002). "If they appear improper, we then look to see if they were flagrant and warrant reversal." *Id.* To determine whether the statements were flagrant, we apply the following factors: (1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidently before the jury; and (4) the total strength of the evidence against the defendant. *Id.* "If the conduct is found not to be flagrant, we will reverse only when (1) the proof against the defendant was not overwhelming, (2) opposing counsel objected to the conduct, and (3) the district court failed to give a curative instruction." *United States v. Brown,* 66 F.3d 124, 127 (6th Cir.1995). "In the absence of an objection, only flagrant conduct will warrant 'plain error' reversal." *Id.*

### b. *Prosecutor's Statement that Agent Riolo Testified that Franks Admitted to Dealing "Drugs"*

■ The prosecutor's statement that Franks admitted to Agent Riolo that he met with Gardner for the purpose of dealing "drugs" was not improper. At trial, Agent Riolo narrated Franks's "confession" as follows:

> Well, I talked to him a little bit while we transported him and we also fingerprinted him and we talked to him a little bit. But he—he admitted that he had dealt with Terry Gardner and that [Gardner] would contact him whenever [Gardner]

was in possession of product, and that they would agree to meet, and he—you know, [Franks] would have an idea of what kind of quantity was available to him, and they would meet either at the pager store or at the car wash.

He also said that ... he had dealt with Gardner for about a year.

Agent Riolo also testified that Franks stated that "he knew that dealing with Gardner was wrong," that he and Gardner discussed "stuff" when they met, and that he and Gardner conducted their "drug business" at Gardner's pager store or his car wash.

In his closing argument, the prosecutor described Franks's "confession" as follows:

His own statement to Special Agent Riolo is that he knew what he was doing with Terry Gardner was wrong, that they would call each other, *that they would meet to exchange the drugs,* that they would talk about the quantity, they would get together and exchange the stuff, and he knew what he was doing was wrong.

(emphasis added). In his rebuttal, the prosecutor reiterated his account of the "confession":

He knew what he was doing was wrong. *They would meet each other for the purpose of dealing drugs.* He knew it was wrong. They would transfer stuff between each other. It's your recollection of the testimony of that statement, but I submit to you that that closes the door in this case. It tells you what was going on from the defendant's own mouth.

(emphasis added).

Franks charges that the italicized language constituted "material misrepresentations" of Agent's Riolo's testimony.

"Agent Riolo," he asserts, "never testified that Mr. Franks admitted to dealing 'drugs' with Gardner; the word 'drugs' was conspicuously absent from Agent Riolo's testimony regarding the alleged confession."

Franks's argument is without merit. Prosecutors "must be given leeway to argue reasonable inferences from the evidence." *United States v. Collins,* 78 F.3d 1021, 1040 (6th Cir.1996). Here, the prosecutor argued, in effect, that when Franks used the words "stuff" and "product" he meant "drugs," a quite reasonable inference when Franks's statement is viewed in its entirety. The prosecutor's intermixing of the words "stuff" and "drugs" during his summary of the statement, as well as his caveat that "its your recollection of the testimony," placed this argument in context for the jury. Moreover, defense counsel's reply that Agent Riolo's testimony was merely "his interpretation" of what Franks said ensured that the issue of Franks's confession was not "withdrawn" from the jury, as Franks insists.[4]

c. *Prosecutor's Characterization of Franks's Statement to Agent Riolo as a "Confession"*

◼ The prosecutor's characterization of Frank's statement to Agent Riolo as a "confession" was not improper. In his closing argument, the prosecutor claimed that Franks's statement "pretty much amounts to a confession, if you believe that agent right there.... The defendant admitted it." In his rebuttal, the prosecutor repeated that the statement "essentially constitutes a confession."

Contrary to Franks's contention, the prosecutor did not "mischaracterize"

---

**4.** Finally, contrary to Franks's suggestion, the word "drugs" is not "absent" from Agent Riolo's testimony. The prosecutor asked, "did he tell you whether they usually conducted their *drug* business?" (emphasis added). Agent Riolo responded, "Yes, he did."

Franks's statement as a "confession." Instead, he carefully qualified his description, arguing that Franks's statement "pretty much amounts to" or "essentially constitutes" a confession and leaving the jury to determine the significance of the statement. As we said in *United States v. Emuegbunam*, 268 F.3d 377 (6th Cir.2001), "prosecutors must be given leeway to argue reasonable inferences from the evidence." *Id.* at 405 (internal quotation omitted). Moreover, even if the prosecutor's use of the term "confession" was improper, Franks's right to a fair trial was not compromised. *See United States v. Goodlow*, 105 F.3d 1203, 1207 (8th Cir. 1997).

#### d. Prosecutor's Identification of Hereford as an "Employee"

■ The prosecutor's misdescription of a defense witness as Franks's "employee" was not flagrant misconduct. Lynzell Hereford, who formerly worked at Franks's car wash, testified that Gardner delivered four bottles of Tire Wet and four bottles of liquid wax to Franks's car wash on one occasion in late 1999. According to Franks, this constituted "critical exculpatory testimony .... supporting the defense theory that Mr. Franks and Gardner were in fact engaged in business dealings involving car-wash products, not illegal drugs." In his closing argument, the prosecutor challenged Hereford's credibility, stating "[w]e have Mr. Franks and two friends, one an employee, he made sure they got here. He went and picked them up. He drove them all the way here. They talked about the case multiple times. Just think about that."

Though inaccurate, and hence improper, the prosecutor's misidentification of Hereford as an "employee" of Franks (rather than a *former* employee) was not flagrant misconduct. Nothing in the record suggests that the prosecutor intentionally misrepresented Hereford's status, and the mistake occurred only once. In addition, the error was not likely to prejudice Franks. In challenging Hereford's credibility, the prosecutor focused on Hereford's friendship with Franks. A fleeting reference to Hereford's status as an "employee"—unaccompanied by any express argument that fear for his job influenced Hereford's testimony—most likely had no material effect on the jury's perception of Hereford's credibility. In sum, the mistake was not flagrant; hence, given Franks's failure to object to the statement, the mistake does not constitute reversible error.

#### e. Prosecutor's Statements Concerning the Memory of Defense Witnesses

■ The prosecutor's attack on the credibility of defense witnesses based on the juxtaposition of their "detailed and specific" memories of certain events with their "vague" memories of other events was not flagrant misconduct. As noted above, Hereford testified that Gardner delivered Tire Wet and liquid wax to Franks's car wash in late 1999. He further testified that he and another employee unloaded the product from the floor in the back of Gardner's black Excursion. Another defense witness, Ricardo Williams, a friend of Franks, testified that he overheard a conversation between Franks and Gardner concerning "supplies for a car wash, like stuff for the tires" in December 1999. The conversation occurred at Gardner's shop, where Williams and Franks had gone to purchase a customized license plate.

Franks claims that the prosecutor misled the jury about these witnesses' testimony by arguing that the witnesses recalled events favorable to Franks's case

with a curious specificity. In his closing argument, the prosecutor stated:

> ... I would just simply ask that you compare those two witnesses who could remember that all this specifically happened in December of 1999. They could remember like it happened right in the winter, happened right in December of '99. *But they couldn't remember another single date that they were asked about. Not another single one.* I can't—I can't be sure, I can't remember, I don't know what year it was, sometime between '93, '94, all these very vague estimations, except what's really, really important to their friend Joe Franks who brought them here today.

(emphasis added). Franks asserts that the italicized language "was simply false," pointing to a number of examples of other "specific" testimony from these witnesses. He notes that Hereford testified that he worked for Franks for "a little over three years," that his tenure lasted from "about" 1997 or 1998 until July 2001, and that he held his previous job from "about" 1993 until 1996. Similarly, Franks calls attention to Williams's testimony that he has been employed as a truck driver "for 19 years" and has worked for the Post Office "one year," that Franks opened his car wash "maybe four or five years ago," and that he last patronized Franks's car wash "maybe three months ago ... maybe February or something like that."

Assuming, for argument's sake, that the prosecutor's argument was improper, the prosecutor's "misconduct" did not rise to the level of flagrancy. Again, nothing in the record indicates that the prosecutor intentionally mischaracterized the evidence, and the misstatement was isolated. Moreover, the prosecutor's argument was not likely to prejudice Franks. Admittedly, the prosecutor overstated his case in claiming that the witnesses "couldn't remember another single date," when Hereford had testified that he last worked for Franks in July 2001 (compared to his testimony that Gardner delivered the Tire Wet and liquid wax in late 1999). Generally speaking, though, the prosecutor's comparison was tenable. While not terribly convincing, his characterization of the dates "in late 1999" and "in December 1999" as "specific," and of the dates "a little over three years," "about 1997 or 1998," "from about 1993 until 1996," "for 19 years," "one year," "maybe four or five years ago," and "maybe three months ago" as "vague estimates," was not unreasonable.[5] Finally, the evidence against Franks was considerable.

### f. Prosecutor's Statements Concerning the Credibility of Agent Riolo

■ The prosecutor's "vouching" for the credibility of Agent Riolo did not constitute flagrant misconduct. In his closing argument, the prosecutor remarked:

> It may be argued that Special Agent Riolo testified that [Gardner broke down the cocaine into eight-kilogram portions before reselling it],[6] just so he can make the case, just so he can convict Joe

---

**5.** Arguably, the prosecutor's contention that the witnesses' testimony concerning Gardner was specific enough to raise suspicion about its credibility is supported by details of the testimony. In particular, Hereford recalled that he unloaded the product from the floor in the back of Gardner's black Excursion, and Williams remembered that he and Franks went to Gardner's store to purchase a customized license plate.

**6.** Agent Riolo testified that Gardner would break down the cocaine into eighth-kilogram quantities before reselling the drugs. Gardner confirmed this during his testimony. This information was material because, in one of the recorded phone calls, the parties discussed "eight gallons of wax and maybe eight gallons of the Tire Wet." Gardner testified that "eight gallons of the wax" and "eight

Franks. He's been an FBI agent for 20 years in Detroit, in Dallas, in Cleveland. And I submit to you that you don't get to be an FBI agent for 20 years and work on multiple wiretap cases and do big investigations and do a lot of good for the community by coming into Court and deciding to make something up about Joe Franks.

Later in his argument, the prosecutor commented:

I submit to you, ladies and gentlemen, that [Franks's statement to Agent Riolo] pretty much amounts to a confession if you believe that agent right there. And I submit to you that combined with all the other evidence in this case, there is absolutely no reason not to. A[ ] 20-year veteran of the FBI didn't make that statement up just to get somebody.

"Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the United States Attorney behind that witness." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir.1999). "Generally, improper vouching involves either blunt comments ... or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *Id.*

Assuming, for argument's sake, that the prosecutor improperly vouched for Agent Riolo's credibility, this misconduct did not rise to the level of flagrancy. Applying the "flagrancy" factors, first, the prosecutor's statements were unlikely to mislead the jury or prejudice the defendant. Arguably, defense counsel insinuated during

cross-examination that Agent Riolo fabricated Franks's confession, and, while this did not entitle the prosecutor to vouch for Agent Riolo's credibility, "it does serve to mitigate the severity of the harm." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982); *see also United States v. Young*, 470 U.S. 1, 11–12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (stating that, in determining whether prosecutorial misconduct affected the fairness of the trial, a court must consider whether defense counsel invited the misconduct). Furthermore, the prosecutor's statements regarding the credibility of Agent Riolo's testimony dealt with matters that were not disputed by Franks. Ultimately, in closing argument, after the prosecutor made the remarks at issue, defense counsel did not argue that Agent Riolo "made up" Franks's "confession"; instead, he contended that Agent Riolo misinterpreted Franks's statement.[7] Similarly, defense counsel did not challenge Agent Riolo's testimony that Gardner informed him that he sold cocaine in "eighths," but rather questioned the credibility of Gardner who, defense counsel implied, concocted the story in order to receive a reduced sentence.

Moving to the other factors, second, the prosecutor did not make "an extensive series of improper statements." *United States v. Modena*, 302 F.3d 626, 635 (6th Cir.2002) (finding that the second factor favored the Government as the prosecutor made only two improper statements during closing argument). Third, it appears that the prosecutor deliberately made the remarks at issue. Fourth, the evidence of Franks's guilt was strong. Thus, only one of the four factors weighs in Franks's favor.

---

gallons of the Tire Wet" each meant eight eighths of cocaine.

7. Defense counsel argued as follows: "[Agent Riolo's] interpreting what this defendant said and wants you, at this time—and I'm not

saying he is not telling the truth. I would absolutely—he is a great guy. I know him. I'm not saying that. I'm saying that's his interpretation of what this man said to him in '99."

In sum, after reviewing the record, considering the parties' briefs and oral argument, and evaluating the "flagrancy" factors, we cannot say that Franks has met his "burden of showing that the prosecutorial misconduct in the present case was so exceptionally flagrant that it constitutes plain error." *Id.* (internal quotation omitted).

### 4. Sufficiency of the Evidence of Conspiracy

■ The district court did not err in denying Franks's motion for a judgment of acquittal. In a challenge to the sufficiency of the evidence, this court asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Brown*, 332 F.3d 363, 372 (6th Cir.2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In pursuing this inquiry, the court "must view the evidence and all inferences therefrom in the light most favorable to the government." *United States v. Odom*, 13 F.3d 949, 958 (6th Cir.1994).

"The essential elements of a drug conspiracy are 1) an agreement to violate the drug laws, and 2) each conspirator's knowledge of, intent to join, and participation in the conspiracy." *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir.2001); *see also United States v. Pearce*, 912 F.2d 159, 161 (6th Cir.1990). "No formal or express agreement is necessary to establish a conspiracy.... A tacit or mutual understanding among the parties is enough." *United States v. Phibbs*, 999 F.2d 1053, 1063 (6th Cir.1993) (internal quotations omitted). "Once the existence of a conspiracy is proven, only slight evidence is necessary to connect a defendant with the conspiracy." *United States v. Hitow*, 889 F.2d 1573, 1577 (6th Cir.1989). "It is only necessary that a defendant know of the object of the conspiracy, associate himself with it, and knowingly contribute his efforts in furtherance." *Id.*

"A mere buyer-seller relationship alone is not sufficient to establish a conspiracy." *Brown*, 332 F.3d at 373. However, evidence of repeated purchases or of a large sales volume provides evidence of more than a mere buyer-seller relationship. *Id.* Moreover, in chain conspiracies, "the agreement can be inferred from the interdependent nature of the criminal enterprise." *Hitow*, 889 F.2d at 1577. "It can be assumed that participants understand they are participating in a joint enterprise because success is dependent on the success of those from whom they buy and to whom they sell." *Id.* Finally, in a chain conspiracy, "it is enough that each member of the conspiracy realizes that he is participating in a joint enterprise, even if he does not know the identities of many of the participants." *Odom*, 13 F.3d at 959 (internal quotation omitted).

Franks argues that, at most, "the evidence supported nothing more than the conclusion that Mr. Franks and Gardner were independent arm's length dealers who had no interest in the success of each other's enterprise." Franks points to Gardner's testimony that Franks never dealt with (or even met) any of the other members of the conspiracy and that Gardner did not "know what [Franks] was doing with the cocaine" and considered Franks's disposition of the cocaine "none of [his] concern."

Sufficient evidence supports Franks's conviction for conspiracy to distribute cocaine. Clearly, Gardner and his associates conspired to deliver cocaine to Cleveland and distribute the drugs there, and the Government adduced evidence permitting a reasonable juror to conclude that Franks knew of, intended to join, and participated in this conspiracy. Gardner testified that Franks was one of his four

regular customers. He would contact Franks (either by cell phone or in person) when he received a shipment of cocaine, and Franks usually would purchase around half the shipment. Gardner reported that he sold Franks approximately 15 kilograms of cocaine[8] over a period of 12 to 18 months in approximately 15 transactions. Finally, Gardner knew that Franks was reselling the cocaine he received. From this evidence, a reasonable juror could have concluded that Franks understood that Gardner operated a large-scale cocaine distribution ring and that Franks and Gardner reached a tacit agreement whereby Gardner would wholesale cocaine to Franks.

Contrary to Franks's assertion, Gardner's and Franks's ignorance of the identities of others in the distribution chain does not preclude a conspiracy conviction. *See Odom,* 13 F.3d at 959; *United States v. Warner,* 690 F.2d 545, 549 (6th Cir.1982) ("Because the success of participants on each level of distribution is dependent upon the existence of other levels of distribution, each member of the conspiracy must realize that he is participating in a joint enterprise, even if he does not know the identities of many of the participants."). The evidence allowed a reasonable juror to conclude that Gardner and Franks had a standing agreement whereby Gardner would contact Franks whenever he received a shipment of cocaine so that Franks could purchase some portion of the shipment. To effectuate this conspiracy, Franks did not need to know the identities of Gardner's supplier and other customers, and Gardner did not need to know the identities of Franks's customers.[9]

### 5. Ineffective Assistance of Counsel

[8] Consistent with our usual practice, we decline to consider Franks's ineffective assistance of counsel claim on direct appeal. "As a general rule, this court will not review claims of ineffective assistance

---

**8.** Franks emphasizes that the jury found him guilty of conspiring to distribute cocaine in the amount of less than 500 grams. However, in evaluating the sufficiency of the evidence, we must consider Gardner's testimony that he sold Franks approximately 15 kilograms of cocaine, even if the jury's verdict does not reflect this testimony. *Cf. United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (holding that an inconsistent verdict, in which a jury acquits the defendant of the predicate offense but convicts the defendant of the compound offense, does not require a finding that there was insufficient evidence to support the conviction); *United States v. Brown,* 332 F.3d 363, 372 (6th Cir.2003) (explaining that, in evaluating the sufficiency of the evidence, this court asks whether, "after viewing *the evidence* in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt" (emphasis added)); *United States v. Smith,* 182 F.3d 452, 457 (6th Cir.1999) ("A jury verdict will not be overturned simply because it is inconsistent or because the jury acquitted a defendant of a predicate offense."); *United States v. Mercer,*

165 F.3d 1331, 1334 (11th Cir.1999) (considering evidence relating to alleged co-conspirator's activities in determining whether there was sufficient evidence to convict the defendant of conspiracy even though the alleged con-conspirator was acquitted). In any event, there is sufficient evidence to sustain Franks's conviction even if Gardner's testimony that he sold Franks approximately 15 kilograms of cocaine is disregarded.

**9.** Nor do Gardner's statements that "I don't know what Franks was doing with [the cocaine]" and that Franks's resale of the cocaine "wasn't my problem" foreclose a conspiracy conviction. Gardner also stated that he understood that Franks was reselling the cocaine, that he contacted Franks when he received a shipment, and that he regularly sold Franks significant quantities of cocaine. From this testimony, and the other evidence presented at trial, a jury could find that Franks and Gardner conspired to distribute cocaine notwithstanding the snippets of testimony cited by Franks. *See Hitow,* 889 F.2d at 1577 ("It can be assumed that participants understand they are participating in a joint

of counsel that are raised for the first time on appeal." *United States v. Thomas,* 74 F.3d 701, 715 (6th Cir.1996) (internal quotation omitted); *see also United States v. Brown,* 332 F.3d 363, 368 (6th Cir.2003). "These claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue." *Thomas,* 74 F.3d at 715 (internal quotation omitted). "This rule stems from the fact that a finding of prejudice is a prerequisite to a claim for ineffective assistance of counsel, and appellate courts are not equipped to resolve factual issues." *United States v. Aguwa,* 123 F.3d 418, 423 (6th Cir.1997) (internal citation omitted).

We have reviewed the parties' briefs and the record on appeal, and we have considered the parties' oral argument. We have not found a sufficient basis for departing from our standard practice in this case.

### 6. Cumulative Effect of Errors

■ Franks's argument that he was deprived of a fair trial by the cumulative effect of the assigned errors is unavailing. "Cumulative error analysis is relevant when there were certain errors at trial which, when considered alone may not deprive a person of due process, but may cumulatively produce a trial that is fundamentally unfair." *United States v. Mays,* 69 F.3d 116, 123 (6th Cir.1995).

Franks argues that even if the assigned errors "do not warrant reversal in isolation, when considered together they reveal the fundamental unfairness of Mr. Franks's trial such that reversal is nevertheless warranted." Of the parade of alleged errors, Franks singles out his sentencing as a "career offender," the admission of the items seized from Franks's residence, and the prosecutor's

"repeated misstatements" during closing argument.

Cumulative error analysis does not mandate a reversal of Franks's conviction. We have addressed the error in sentencing Franks as a "career offender" individually. Regarding the remaining assignments of error, we have considered the briefs, the record on appeal, and the parties' oral argument, and we find that the alleged errors, taken together, did not deprive Franks of a fair trial.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** Frank's conviction but **VACATE** his sentence and **REMAND** his case to the district court for resentencing.