NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0385n.06
Filed: May 11, 2005

No. 04-3817

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MICHAEL J. COTEAT, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MARTIN, COOK, and LAY,[*] Circuit Judges.

COOK, Circuit Judge. Michael Coteat appeals the sentence he received after pleading guilty

to armed bank robbery and possession of a firearm during and in relation to a crime of violence.

Coteat maintains that the district court erroneously sentenced him as a career offender and that his

career-offender enhancement violates the Sixth Amendment under *Booker*. We find neither

argument availing and therefore affirm Coteat's sentence.

I

Under § 4B1.1 of the United States Sentencing Guidelines, a defendant qualifies as a career

offender if: "(1) the defendant was at least eighteen years old at the time [he] committed the instant

---

[*]The Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by
designation.

offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S. Sentencing Guidelines Manual § 4B1.1(a) (2003). Coteat concedes he meets the first two requirements, but challenges the district court's characterization of his Ohio conviction under Ohio Rev. Code § 2925.03(A)(4) as a controlled-substance offense. Absent this offense, Coteat would have only one predicate offense and thus would not qualify as a career offender.

The Guidelines define a "controlled substance offense" as "an offense under federal or state law . . . that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S. Sentencing Guidelines Manual § 4B1.2(b) (2003). Thus, as Coteat correctly posits, a simple possession offense cannot serve as a predicate offense for career-offender status. Our task, then, is determining whether Coteat's conviction under Ohio Rev. Code § 2925.03(A)(4) represents a simple possession offense, as he alleges, or a drug-trafficking offense, as the Government argues and the district court held. In doing so, we must apply a categorical approach, limiting our inquiry to "an examination of the fact of conviction and the statutory definition of the predicate offense" without regard to "[a]ny specific, underlying facts regarding the offense." *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995) (citations omitted).

Ohio Rev. Code § 2925.03, entitled "Trafficking offenses," provides:

(A) No person shall knowingly do any of the following:

\*\*\*

(4) Possess a controlled substance in an amount equal to or exceeding the bulk amount, but in an amount less than three times that amount;

\*\*\*

(F) It shall be an affirmative defense . . . to a charge under this section for possessing a bulk amount of a controlled substance . . . that the substance that gave rise to the charge is in such amount, in such form, . . . or is possessed or cultivated in any other circumstances whatsoever as to indicate that the substance was solely for personal use.

Ohio Rev. Code § 2925.03 (West 1993).

Pressing the absence of an explicit intent to distribute requirement, Coteat insists that § 2925.03(A)(4) punishes just simple possession and cannot serve as a "controlled substance offense" under the Guidelines. We previously considered and rejected this argument in *Gibbs v. United States,* 3 Fed. Appx. 404 (6th Cir. 2001). There we similarly analyzed § 2925.03 of the Ohio Rev. Code [1] and found the requisite intent to distribute, in part by noting that Ohio proscribes drug *possession* in a separate section of the same chapter of the Code, Ohio Rev. Code § 2925.11. We also viewed the inclusion of a personal-use defense to Coteat's crime as indicative of a trafficking rather than a simple possession offense. We therefore upheld the use of the conviction under § 2925.03(A)(4) as a predicate offense for career-offender classification.

---

[1]Coteat's counsel suggested during oral argument that the version of § 2925.03 we analyzed in *Gibbs* differs from the version at issue here. Upon review, we find no material differences between the versions.

Coteat, convinced of *Gibbs*'s variance from the categorical approach, urges us to reach a different result here. According to Coteat, we erred in *Gibbs* by looking beyond the express language in (A)(4) to determine eligibility. We disagree—the categorical approach does not limit courts in the manner Coteat suggests. To "avoid[] the impracticability and unfairness of allowing a sentencing court to engage in a broad factfinding inquiry relating to a defendant's prior offenses," the categorical approach precludes consideration of the specific facts surrounding the commission of an offense. *Arnold*, 58 F.3d at 1121. *Gibbs* employed classic statutory construction principles— *consistent* with the categorical approach—to adduce the statute's meaning, considering both its explicit language, and implications from the statutory structure to conclude that (A)(4) contemplated trafficking, not simple possession. In accord with *Gibbs*, we affirm the district court's holding that Coteat's prior conviction under § 2925.03(A)(4) qualifies as a predicate offense for purposes of career-offender status.

II

Coteat maintains in the alternative that if his conviction qualifies as a predicate offense, then we must apply Ohio's new law, under which, as he sees it, his crime would unquestionably constitute a possession offense. Ascribing ambiguity to the career-offender provision of the Guidelines regarding whether the law at the time of conviction or the law at the time of sentencing controls for classification purposes, Coteat argues that the rule of lenity entitles him to the benefit of large-scale revisions in Ohio law implemented after Coteat's conviction but before his federal sentencing.

Even accepting Coteat's underlying premise that the new law is more favorable, we nonetheless find the rule of lenity inapplicable here. Coteat relies heavily on our decision in *United States v. Morton*, in which we used the rule of lenity to apply a new, more favorable version of a statute to determine predicate-offense qualification. 17 F.3d 911 (6th Cir. 1994). *Morton* involved a defendant sentenced under 18 U.S.C. § 924(e)(1), which provides for a mandatory minimum sentence if a defendant has three prior convictions for "serious drug offenses," a classification limited to offenses "for which a maximum term of imprisonment of ten years or more is prescribed by law." *Id*. at 914 (internal citation omitted). Though the defendant's convictions all carried a maximum sentence of more than ten years at the time of his conviction, changes in the law resulted in two of the convictions carrying only a six-year maximum at the time of his federal sentencing. *Id*. Consequently, whether the crimes constituted predicate offenses depended entirely on whether "a serious drug offense . . . is determined with respect to the maximum term of imprisonment under state law at the time of the state conviction or at the time of the sentencing in federal court." *Id*. at 915. Finding the statute ambiguous regarding which version of the statute should govern, we applied the rule of lenity and resolved the question in the defendant's favor. *Id*.

But we have declined to find ambiguity warranting application of the rule of lenity in U.S.S.G. § 4B1.1, the career-offender provision at issue here. In *Mallett v. United States*, 334 F.3d 491(6th Cir. 2003), we distinguished § 4B1.1 from 18 U.S.C. § 924 because the Guidelines instruct: "The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established . . . ." *Id*. at 503 (quoting U.S. Sentencing Guidelines § 4B1.2(c) (2000), which

defines terms found in § 4B1.1). Recognizing that "this instruction does not flatly state that the classification of a controlled-substance offense as a felony is to be determined as of the date that the guilt of the defendant was established," we nonetheless found that conclusion "the most logical inference to draw." *Id.*

We also found that the changes in Ohio law "provide[d] no guidance as to how Mallett's offense would currently be classified," which further distinguished *Mallett* from *Morton. Id.* at 504. Whereas Morton's offense clearly could not qualify as a predicate offense under the newer version of the statute, the wide-scale changes in Ohio law made it impossible to determine with certainty whether the new law would actually favor Mallett. We thus held:

> Where a state has amended its drug laws after a defendant's state-court conviction but prior to his or her federal-court sentencing, so that the offense for which the defendant had been convicted no longer exists and no conversion between the former and amended statutes is facially apparent, the disinclination to scrutinize the facts of prior state-court convictions militates in favor of determining the classification of the controlled-substance offense as of the time of the state-court conviction.

*Id.* at 502-03.

*Mallett*, not *Morton*, controls the outcome in this case. Like *Mallett*, this case requires us to consider § 4B1.1 of the Guidelines in the face of broad revisions to the Ohio drug statutes that make it impossible to determine how Coteat would be charged under the new law. Accordingly, we conclude that the law in effect at the time of Coteat's conviction determines whether his prior offense qualifies as a predicate offense. As we have already determined that Coteat's conviction

under the law in effect at that time constitutes a predicate offense for career-offender-classification, it follows that the district court correctly characterized Coteat as a career offender.

III

Finally, Coteat advances *United States v. Booker* as a basis for relief, insisting that the district court violated his Sixth Amendment rights when it applied the career-offender enhancement. Our recent *Bradley* decision stops Coteat short. The § 4B1.1 career-offender enhancement "stems from the very type of recidivism enhancement that *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L.Ed.2d 350 (1998), held need not be charged and proved before a jury." *United States v. Bradley,* 400 F.3d 459, 462 (6th Cir. 2005). "From *Apprendi* to *Blakely* to *Booker*, the Court has continued to except such factfinding from the requirements of the Sixth Amendment." *Id.* Regardless of Justice Thomas's concurrence in *Shepard v. United States,* 125 S. Ct. 1254, 1263-64 (2005) (Thomas, J., concurring), foreshadowing the demise of the *Almendarez-Torres* exception, for now *Almendarez-Torres* remains the law, and Coteat's Sixth Amendment argument lacks merit.

Under *Booker*, the absence of a Sixth Amendment violation does not necessarily preclude remand where the district court considered the Guidelines mandatory. *United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005). But we need not address the validity of Coteat's "statutory claim" because Coteat waived his right to appeal, reserving only the right to challenge "any adverse decision on his career offender status." We have held that a valid appeal waiver bars our review of a *Booker* claim, notwithstanding that the waiver predates the *Booker* decision. *Bradley*, 400 F.3d at 465.

IV

Finding no error in the district court's application of the career-offender enhancement and no Sixth Amendment violation, we affirm.