RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0107p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 04-4543

LUIS A. MONTANEZ,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-00138—Kathleen McDonald O'Malley, District Judge.

Argued: March 15, 2006

Decided and Filed: March 23, 2006

Before: MARTIN and CLAY, Circuit Judges, SARGUS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Philip J. Korey, Cleveland, Ohio, for Appellant. Lori A. Hendrickson, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Philip J. Korey, Cleveland, Ohio, for Appellant. Lori A. Hendrickson, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

---

## OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. The defendant, Luis Montanez, was charged in a one-count indictment for possession of an unspecified amount of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a). Montanez pled guilty and was sentenced to 130 months imprisonment, the minimum sentence under the Federal Sentencing Guidelines, based on the district court's conclusion that Montanez qualified as a career offender. *See* U.S.S.G. § 4B1.1. Montanez objected to the Guideline sentence based on *Blakely v. Washington*, 542 U.S. 296 (2004). The district court denied the objection, but stated that if the Guidelines were not mandatory, it would sentence Montanez to 60 months instead of the 130 months mandated by the Guidelines. On appeal, Montanez argues that he is entitled to be resentenced based upon *United States v. Booker*, 543 U.S. 220 (2005), and the government concedes that Montanez is entitled to resentencing under this

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

Court's decision in *United States v. Barnett*, 398 F.3d 516, 526 (6th Cir. 2005). Montanez also argues that his predicate convictions in Ohio state court do not qualify as "controlled substance offense[s]" under section 4B1.1, and therefore he is not a career offender under the now-advisory Guidelines. In support of his claim, Montanez cites to allegedly conflicting unpublished dispositions from this Circuit on whether convictions under former Ohio Revised Code § 2925.03 qualify as controlled substance offenses, and therefore enhancing predicate offenses, under the Guidelines. We use the categorical approach and hold that Montanez's convictions under Ohio Revised Code § 2925.03(6) and (9) do *not* qualify as "controlled substance offense[s]" under section 4B1.1. We therefore VACATE Montanez's sentence and REMAND for resentencing.

## I.

The question before us is whether Montanez's two drug-related convictions under former Ohio Revised Code § 2925.03(A)(6) and (9) constitute predicate offenses for career offender status. Citing this Court's unpublished disposition in *Gibbs v. United States*, 3 Fed. Appx. 404 (2001), the district court determined that both of Montanez's state court convictions qualified as predicate controlled substance offenses. We review legal conclusions regarding the application of Guideline provisions *de novo*. *United States v. Foreman*, 436 F.3d 638, 640 (6th Cir. 2006) (citing *United States v. Gregory*, 315 F.3d 637, 642 (6th Cir.2003)).

Starting at the beginning, section 4B1.1 of the Guidelines states:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The term "controlled substance offense" is defined by the Guidelines as:

an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). Thus, under the Guidelines, simple possession — that is, possession without the proof beyond a reasonable doubt of the requisite intent to "manufacture, import, export, distribute, or dispense" — is not a controlled substance offense. *See United States v. Hernandez*, 218 F.3d 272, 278 (3d Cir. 2000); *United States v. O'Neal*, 27 F.3d 90, 92 (4th Cir. 1994); *United States v. Casarez-Bravo*, 181 F.3d 1074, 1077-78 (9th Cir. 1999); *United States v. Kissick*, 69 F.3d 1048, 1053-54 (10th Cir. 1995) (collecting cases); *United States v. Gaitan*, 954 F.2d 1005, 1011 (5th Cir. 1992).

Former Ohio Revised Code § 2925.03, titled "Drug Trafficking Offenses" provided, with respect to subsection (6) and (9), at the time of Montanez's convictions that:

(A) no person shall knowingly do any of the following:

> (6)    Possess a controlled substance in an amount equal to or exceeding three times the bulk amount, but in an amount less than one hundred times that amount;

(9)        Possess a controlled substance in an amount equal to or exceeding one hundred times the bulk amount;[1]

Thus, Montanez argues that because his offenses involve only the knowing possession of drugs, and do not have, as an element of the crime, proof of "intent to manufacture, import, export, distribute, or dispense," U.S.S.G. § 4B1.1, then his convictions cannot qualify as controlled substance offenses under the Guidelines.

A.

In addressing Montanez's claim, we take a categorical approach. *Foreman*, 436 F.3d at 641 (citing *Shepard v. United States*, 125 S. Ct. 1254, 1259 (2005)); *see also United States v. Galloway*, — F.3d — , 2006 WL 453003, at *2 (6th Cir. Feb. 27, 2006) (citing *United States v. Martin*, 378 F.3d 578, 581 (6th Cir. 2004)); *United States v. Butler*, 207 F.3d 839, 842-43 (6th Cir. 2000); *United States v. Dolt*, 27 F.3d 235, 240 (6th Cir. 1994) ("The prior convictions requirement of the Guidelines' career offender provision is to be interpreted strictly."). Under the categorical approach, "it is not only impermissible, but pointless, for the court to look through to the defendant's actual criminal conduct." *Butler*, 207 F.3d at 843. This approach "avoids the subsequent evidentiary enquiries into the factual basis for the earlier conviction." *Shepard*, 125 S. Ct. at 1259. "Generally speaking, only the fact of the prior conviction and the statutory definition of the predicate offense are used to determine whether a prior conviction is a controlled substance offense." *Galloway*, 2006 WL 453003, at *2 (citations omitted). If, however, the categorical approach fails to be determinative, a sentencing court may look to the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented," *Shepard*, 125 S. Ct. at 1257, in order to determine whether the prior crime qualifies as a controlled substance offense. *See also Galloway*, 2006 WL 453003, at *3 (noting that although *Shepard* applied to review under the Armed Career Criminal Act, it "[b]y extension" applies to review under Guideline section 4B1.1).

---

[1]The remaining sections of the statute states as follows:

(1)        Sell or offer to sell a controlled substance in an amount less than the minimum bulk amount;

(2)        Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe the controlled substance is intended for sale or resale by the offender or another;

(3)        Cultivate, manufacture, or otherwise engage in any part of the production of a controlled substance;

(4)        Possess a controlled substance in an amount equal to or exceeded the bulk amount, but in an amount less than three times that amount;

(5)        Sell or offer to sell a controlled substance in an amount equal to or exceeding the bulk amount, but in an amount less than three times that amount;

. . . .

(7)        Sell or offer to sell a controlled substance in an amount equal to or exceeding three times the bulk amount, but in an amount less than one hundred times that amount;

(8)        Provide money or other items of value to another person with the purpose that the recipient of the money or items of value would use them to obtain controlled substances for the purpose of selling or offering to sell the controlled substances in amounts exceeding a bulk amount or for the purpose of violating division (A)(3) of this section;

. . . .

(10)        Sell or offer to sell a controlled substance in an amount equal to or exceeding one hundred times the bulk amount . . .

B.

As Montanez points out, there are conflicting unpublished dispositions on this issue in our Circuit, as well as one case from the Ninth Circuit. We address each case in turn.

In *Gibbs*, upon which the Government relies, this Court addressed whether a conviction under former Ohio Revised Code § 2925.03(A)(4)[2] was properly classified as a controlled substance offense under Guideline section 4B1.1. Based on the language of section (A)(4), the defendant argued that he was convicted only of "simple possession" and that his conviction could not therefore qualify as a controlled substance offense under the Guidelines. In rejecting the defendant's argument, this Court noted that simple possession constitutes a violation of Ohio Revised Code § 2925.11, which is titled "Drug Possession Offenses." *Gibbs*, 3 Fed. Appx. at 406. The defendant in *Gibbs*, like Montanez here, was convicted, not under section 2925.11, but rather under section 2925.03, which is titled "Drug Trafficking Offenses." *Id.* This Court also noted that the Ohio courts have concluded that section 2925.03 "relates to illicit drug trafficking, while § 2925.11 is aimed at users and not at sellers." *Id.* (citing *State v. Goodnight*, 370 N.E.2d 486, 488 (Ohio Ct. App. 1977)). Finally, this Court noted that a defendant charged under section 2925.03 has a valid affirmative defense of "personal use," and if proven, the defendant cannot be convicted under section 2925.03. *Id.*[3]

A year later, a different panel of this Court addressed the claim in a slightly different manner under the categorical approach in another unpublished disposition. *See United States v. Wright*, 43 Fed. Appx. 848 (6th Cir. 2002). In *Wright*, the defendant had a prior conviction for a violation of Ohio Revised Code § 2925.03(2) (1989), which stated: "(A) No person shall knowingly . . . [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe such drug is intended for sale or resale by the offender or another." This Court took the categorical approach and noted that "[r]esort to the statute under which the defendant was convicted will not resolve the question of whether the conviction should be counted under U.S.S.G. § 4B1.1 where the statute punishes conduct that is both qualifying and non-qualifying." *Wright*, 43 Fed. Appx. at 852 (citing *United States v. Arnold*, 58 F.3d 1117, 1122 (6th Cir. 1995)). Reviewing section 2925.03(A)(2), the Court concluded that the statute punished qualifying and non-qualifying conduct, and therefore, the categorical approach did not provide a determinative answer. *Id.* The Court quickly turned to the indictment, and there found that the defendant was specifically charged with knowingly preparing for shipment, transport, or delivery, which left "little doubt" that the defendant's conviction was for a controlled substance offense. *Id.* at 852-53. Thus, *Wright* differs from *Gibbs* in that in *Wright*, the Court looked specifically to the elements of section 2925.03(A)(2) and found that the statute criminalized qualifying and non-qualifying conduct, while the Court in *Gibbs* looked to section 2925.03 as a whole, without regard to the specific statutory crime at issue.

Then in *United States v. Franks*, 98 Fed. Appx. 483, 487-88 (6th Cir. 2004), the Court addressed a defendant's claim that his sentence was improperly enhanced based on his conviction under Ohio Revised Code § 2925.11. The Court noted that section 2925.11, titled "Drug Possession Offenses" reads, "No person shall knowingly obtain, possess, or use a controlled substance." Ohio Rev. Code § 2925.11(a) (West 2004). Reading the statute, the Court determined that it "does not include an element of manufacture, import, export, distribution, or dispensing," and therefore, the

---

[2]Section (A)(4) criminalizes the knowing "[p]ossess[ion] [of] a controlled substance in an amount equal to or exceeding the bulk amount, but in an amount less than three times that amount."

[3]The *Gibbs* panel did not explain the significance of the "personal use" defense. We can only speculate that the *Gibbs* panel believed that the presence of the personal use defense indicated *sub silentio* that there existed an intent to distribute requirement in the statute.

conviction could not qualify as a controlled substance offense. *Franks*, 98 Fed. Appx. at 488 (citing U.S.S.G. § 4B1.2(b)). The Court cited *Gibbs* for the proposition that section 2925.11 is a simple possession offense aimed as users and not sellers of drugs. *Gibbs*, 3 Fed. Appx. at 406.

Later, in *United States v. Coteat*, 133 Fed. Appx. 177 (6th Cir. 2005), this Court addressed the same subsection at issue in *Gibbs* and reached the same conclusion. Citing *Gibbs* (but ignoring *Wright*), the Court emphasized that Ohio prohibits drug *possession* in section 2925.11 and that a personal-use defense is available under section 2925.03. *Coteat*, 133 Fed. Appx. at 179. The Court rejected the argument that it was improper to look beyond the "express language" in (A)(4), explaining that "*Gibbs* employed classic statutory construction principles — consistent with the categorical approach — to adduce the statute's meaning, considering both its explicit language, and implications from the statutory structure to conclude that (A)(4) contemplated trafficking, not simple possession." *Id.*

Finally, we also note that one defendant, previously convicted under Ohio Revised Code § 2925.03(A)(4), managed to find his way to California and was convicted there for possession with intent to distribute cocaine. *United States v. Foster*, No. 93-50402, 1994 WL 201201 (9th Cir. May 23, 1994) (unpublished table disposition). Thus, the Ninth Circuit has also weighed in on whether convictions under Ohio Revised Code § 2925.03(A)(4) qualify as controlled substance offenses under the Guidelines. The court noted that section 2925.03(A)(4) provided that "No person shall knowingly . . . [p]ossess a controlled substance in an amount equal to or exceeding the bulk amount but in an amount far less than three times that amount[.]" *Foster*, 1994 WL 201201, at \*1. The defendant argued that because the statutory definition did not contain an element of intent to distribute, his conviction could not qualify as a controlled substance offense under the Guidelines. The Ninth Circuit held that:

> ORC § 2925.03(A)(4) falls short of the federal definition of a controlled substance offense. It does not require the State to prove an intent to distribute. *See* USSG § 4B1.2(2). In the absence of such proof, Foster's conviction under ORC § 2925.03(A)(4) may not be counted for purposes of career offender sentence enhancement under USSG § 4B1.1.

*Id.* (footnote omitted). The Court further rejected the Government's argument that the Ohio legislature merely substituted the element of bulk amount for the element of intent to sell; an argument which was accepted by the Ohio courts in *Goodnight*, 370 N.E.2d at 493. According to the Ninth Circuit, however, "[w]hile this wording may suit Ohio's purposes, it does not comport with the requirement that, for purposes of federal sentencing law, criminal intent to distribute must be proven and not merely implied." *Foster*, 1994 WL 201201, at \*1 n.2.

## II.

After reviewing *Gibbs*, *Wright*, and *Coteat*, we believe that *Gibbs* and *Coteat* were wrongly decided, and we find ourselves in agreement with the Ninth Circuit's unpublished disposition in *Foster* and our disposition in *Wright*. We do so by employing the categorical approach and looking to the statutory language for the two convictions at issue here — Ohio Revised Code § 2925.03(A)(6) and Ohio Revised Code § 2925.03(A)(9). Montanez was convicted under two statutes that stated: "No person shall knowingly . . . [p]ossess a controlled substance in an amount equal to or exceeding three times the bulk amount, but in an amount less than one hundred times that amount," Ohio Revised Code § 2925.03(A)(6), and also "No person shall knowingly . . . [p]ossess a controlled substance in an amount equal to or exceeding one hundred times the bulk amount," Ohio Revised Code § 2925.03(A)(9). It is abundantly clear from the plain language of the statutes of conviction that each contains *only* the element of "possession" and *does not* contain the element of "intent to distribute." Therefore our inquiry under *Shepard* is at an end. *See Foster*, 1994 WL

201201, at *1 n.2 ("[F]or purposes of federal sentencing law, criminal intent to distribute must be proven and not merely implied."). Because of past conflicting unpublished dispositions, however, we address the errors contained in those decisions.

In *Gibbs*, we focused on the title of Ohio's statutory section, "Drug Trafficking Offenses," as well as the fact that Ohio criminalized so-called "simple possession" in another section of its statutory scheme. *Gibbs*, 3 Fed. Appx. at 406. We likewise found it persuasive that Ohio courts had determined that the section was aimed at sellers and not users. *Id.* How a state titles its statutory provisions, however, is not determinative of what actual statute a defendant was convicted under for federal sentencing purposes. Moreover, none of our past dispositions accounted for the fact that the Ohio legislature has specifically stated that: "Title, Chapter, and section headings and marginal General Code section numbers do not constitute any part of the law as contained in the 'Revised Code.'" Ohio Rev. Code § 1.01. *See also Warner v. Zent*, 997 F.2d 116, 133 (6th Cir. 1993) ("Such headings, however, do not constitute any part of Ohio law. Resort to a title in construing a statute is unnecessary and improper."). The fact that the statutory section at issue is titled "Drug Trafficking Offenses" is simply irrelevant and the *Gibbs* panel erred by concluding otherwise. The determinative issue, however, is the elements that make up the prior state crime of conviction. *Shepard*, 125 S. Ct. at 1259 (noting that "the categorical approach . . . refers to predicate offenses in terms not of prior conduct but of prior 'convictions' and the 'element[s]' of crimes"). For federal sentencing purposes, a sentencing court looks to the *elements* of the prior offense to determine whether it qualifies under the Guidelines. *See generally id.*; *Martin*, 378 F.3d at 581 (looking to statutory *definition* of the crime); *United States v. Bass*, 315 F.3d 561, 565 (6th Cir. 2002) ("[W]hen it is not clear from the *elements* of the offense alone whether the crime [qualified for enhancement under the Guidelines], the sentencing court may review the indictment for the specific conduct charged.") (emphasis added); *United States v. Champion*, 248 F.3d 502, 505 (6th Cir. 2001) (applying categorical approach in determining whether an offense has as an *element* "the use, attempted use, or threatened use of physical force").[4]

Additionally, the fact that Ohio punishes other drug possession, without the bulk quantity requirement, in another section of its statutory scheme does not change the elements of the underlying offenses under which Montanez was convicted. Conversely, if one or more subsections of Ohio Revised Code 2925.11 contained an element of possession *with intent*, the Government surely would not argue that the defendant's sentence could not be enhanced because the definition of the statutory section, "Drug Possession Offenses," controlled the inquiry. Furthermore, as discussed above, any reliance on statutory titles in this case is simply unavailing. *See* Ohio Rev. Code § 1.01. It is the *elements* of the crimes that matter.

*Gibbs* also found it relevant that the Ohio legislature aimed section 2925.03 at sellers, not users, *see Goodnight*, 370 N.E.2d at 493, but we do not conduct an inquiry into whom, as a class, the legislature wished to target, but rather those whose conduct falls within the elements of the criminalized offense.[5] *See, eg., Foster*, 1994 WL 201201, at *1 n.2 ("While this wording may suit Ohio's purposes, it does not comport with the requirement that, for purposes of federal sentencing law, criminal intent to distribute must be proven and not merely implied.").

---

[4]We also reject *Gibbs*'s implied suggestion that the availability of an affirmative defense of personal use somehow reads an intent to distribute element into the crime. A defendant's failure to prevail on an affirmative defense does not suffice to create an additional element of the crime that is neither charged nor proven beyond a reasonable doubt to the jury.

[5]We note that the legislature arguably hit its target with sections (A)(1), (2), (3), (5), (7), (8), and (10). With regard to sections (A)(4), (6), and (9), however, the legislature criminalized *only* possession in a bulk amount. Ohio Rev. Code § 2925.03.

In *Coteat*, we essentially cited and relied entirely on *Gibbs* for our conclusion. *Coteat*, 133 Fed. Appx. at 179 (citing no other cases but *Gibbs*). Having rejected *Gibbs* as a proper disposition, we likewise reject *Coteat*'s holding and disagree with its conclusion that "implications from the statutory structure," *id.*, can trump the clear and explicit elements of the offense. We do believe that the statutory structure can, at times, be informative; but where the elements of the offense are clear, we need look no further.

With respect to *Wright*, we agree that the defendant there was charged with a subsection where the categorical approach is *not* determinative. 43 Fed. Appx. at 852-53. The defendant's prior conviction in *Wright* was pursuant to section (A)(2), which stated: "No person shall knowingly . . . [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe such drug is intended for sale or resale by the offender or another." Thus, this precise definition criminalized qualifying and non-qualifying conduct. The Court appropriately, therefore, looked to the indictment and found that the defendant was charged with preparing drugs for distribution *intended* for sale. *Id.* at 853. By looking to the indictment when the categorical approach proved equivocal, the Court was able to determine that the defendant's conduct — and the elements within section (A)(2) for which he was convicted under — qualified as a controlled substance offense under the Guidelines.

Perhaps even more relevant and supportive of our conclusion, although none of the prior decisions mentioned this fact, is that under Ohio Revised Code § 2925.03, sections (A)(6) and (A)(7) are identical, except that (A)(6) criminalizes the "possess[ion] [of] a controlled substance" in a bulk amount, and (A)(7) criminalizes "sell[ing] or offer[ing] to sell a controlled substance" in a bulk amount. The exact same can be said for sections (A)(9) and (A)(10). Thus, had Ohio wished to convict Montanez of something more than possession it needed only charge him with (A)(7) instead of (A)(6) and (A)(10) instead of (A)(9). Convictions under either of these alternative provisions, which criminalize the sale as opposed to simple possession, would likely have qualified under U.S.S.G. § 4B1.1 as a controlled substance offense. Ohio did not so charge, and for federal sentencing purposes, we cannot allow the United States to rewrite the statutory elements of Ohio Revised Code § 2925.03(A)(6) and (9).[6] For federal sentencing Guideline purposes, we will simply not read into an offense an element that is not in the prior statute of conviction, nor admitted to by the defendant, nor found beyond a reasonable doubt by a jury. Neither of the defendant's prior convictions contained an element of intent to distribute that would allow his current sentence to be enhanced under § 4B1.1.

### III.

In conclusion, we hold that convictions under former Ohio Revised Code § 2925.03(6) and (9) do not qualify as "controlled substance offenses" under U.S.S.G. § 4B1.1. The district court erred by concluding otherwise. We therefore VACATE Montanez's sentence and REMAND for resentencing. On remand, the district court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a). *See also United States v. Richardson*, 437 F.3d 550, 553-54 (6th Cir. 2006) ("We emphasize the obligation of the district court in each case to communicate clearly its rationale for imposing the specific sentence. Where a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for [accepting or] rejecting it."); *Foreman*, 436 F.3d at 644 n.1 ("It is worth noting that a district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section

---

[6]We also note that, even if the categorical approach were not determinative, and we were required to turn to the indictment and other permissible documents, the conclusion would be the same. The indictment in each of Montanez's convictions charged him only with possessory offenses.

3553(a)(2). Reasonableness is the appellate standard of review in judging whether a district court has accomplished its task."); *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005) (reaffirming that "we as an appellate court must still have the articulation of the reasons the district court reached the sentence ultimately imposed"); *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005) ("Post-*Booker* we continue to expect district judges to provide a reasoned explanation for their sentencing decisions in order to facilitate appellate review.").