NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 08-4720

———————————

MELVIN POLLARD,

Appellant

v.

JOHN YOST,
Warden, FCI Loretto

———————————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 3-07-cv-00235)
District Judge: Honorable Kim R. Gibson

———————————

Argued January 5, 2011

Before: AMBRO and  FISHER, Circuit Judges
and SÁNCHEZ,[*] District Judge

(Opinion filed  January 24, 2011)

Patrick Matusky, Esquire (Argued)
Charles M. Hart, Esquire
Vincent J. Nolan III, Esquire
Duane Morris
1940 Route 70 East, Suite 200
Cherry Hill, NJ  08003

———————————

[*] Honorable Juan R. Sánchez, District Court Judge, Eastern District of Pennsylvania,
sitting by designation.

Counsel for Appellant

Robert S. Cessar
   Acting United States Attorney
Laura S. Irwin, (Argued)
   Assistant United States Attorney
Robert L. Eberhardt, Esquire
Office of the United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA   1529-0000

   Counsel for Appellee

_____

OPINION

_____

AMBRO, <u>Circuit Judge</u>

Appellant Melvin Pollard raises a claim of actual innocence of his sentence as a career offender due to a change in substantive law subsequent to exhausting his appeals. We conclude that, under the particular circumstances of Pollard's case, the District Court was correct in determining that it lacks subject matter jurisdiction to consider his petition for *habeas corpus*. Thus, we affirm that ruling and dismiss Pollard's petition.

Pursuant to a written plea agreement, in 2002 Pollard pled guilty in the United States District Court for the Northern District of Illinois to conspiracy to possess phencyclidine ("PCP") with intent to distribute. As part of the plea agreement, the Government agreed to file a downward departure motion pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), recommending that the Court impose a term of imprisonment equivalent to two-thirds of the low end of the applicable Sentencing Guidelines range.

2

Although Pollard disagreed, the Government argued in the plea agreement and at sentencing that his prior criminal history qualified him as a career offender under U.S.S.G. § 4B1.1.

The Court accepted the plea agreement and granted the downward departure motion. It also accepted the Government's classification of Pollard as a career offender. It imposed a term of imprisonment of 194 months, below the applicable Sentencing Guidelines range of 292 to 365 months' imprisonment, and also below the minimum 210-month term he would have faced had he not been classified as a career offender. Pollard's career offender classification was based in part on a 1983 state court drug conviction under former Ohio Rev. Code § 2925.03(A)(6).

Pollard did not directly appeal his sentence. However, in August 2003 he filed a *pro se* petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 in the Northern District of Illinois. He argued, *inter alia*, that the sentencing court erred in classifying him as a career offender.[1] In January 2004, the Court dismissed the petition, holding that Pollard had knowingly and voluntarily waived his right to attack his sentence collaterally.[2]

In 2006, the Sixth Circuit Court of Appeals held in *United States v. Montanez*, 442 F.3d 485, 487 (6th Cir. 2006), that the offense set forth in former Ohio Rev. Code

---

[1] Pollard argued that because his 1983 state court conviction was imposed more than 15 years before his offense before us, it was not a predicate offense under § 4B1.1.

[2] Pollard's plea agreement contained a provision waiving his right to challenge his sentence "in any collateral attack" except those raising claims alleging that his plea was involuntary or that counsel provided ineffective assistance in negotiating the waiver of his collateral appellate rights. Pollard appealed the decision to the Seventh Circuit Court of Appeals, which denied his request for a certificate of appealability in December 2004.

§ 2925.03(A)(6)—the same offense that gave rise, in part, to Pollard's career offender classification—was not a predicate offense for career offender status under § 4B1.1. In September 2007, Pollard filed this *habeas* petition pursuant to 28 U.S.C. § 2241 in the Western District of Pennsylvania, arguing that, in light of *Montanez*, his sentence as a career offender should be vacated. He claimed that he was entitled to pursue relief under § 2241 because § 2255 was inadequate and ineffective to test the legality of his detention, as *Montanez* had been decided after the disposition of his prior § 2255 petition.

The District Court referred Pollard's petition to a Magistrate Judge, who issued a Report and Recommendation ("Report") concluding that Pollard had not demonstrated that § 2255 was inadequate or ineffective, and thus the Court lacked subject matter jurisdiction to consider his § 2241 petition. The Court adopted the Report and dismissed Pollard's petition over his objections. This appeal followed. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253.

Although Pollard may not file a successive § 2255 petition due to the gate-keeping provision of § 2255(h),[3] a "safety valve" provision allows challenges to a conviction or sentence in certain narrow circumstances via the federal courts' § 2241 jurisdiction when a prisoner can show that § 2255 is "inadequate or ineffective to test the legality of his

---

[3] A district court lacks jurisdiction to consider a successive § 2255 motion unless it is certified by a panel from this Court to contain a claim of:
> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h)(1)-(2). It is undisputed that Pollard cannot meet that standard.

4

detention." § 2255(e). The safety valve provision was not amended by AEDPA. *See In re Dorsainvil*, 119 F.3d 245, 249 (3d Cir. 1997).

We concluded in *Dorsainvil* that, in the narrow circumstances the petitioner in that case faced, § 2255 was inadequate to test the legality of his detention. *Id.* at 251. Dorsainvil was convicted of using a gun in connection with a drug crime even though he did not "use" a gun, but a gun was present in the car from which drugs were to be bought. After he had exhausted his direct appeals and a § 2255 petition, the Supreme Court decided in *Bailey v. United States*, 516 U.S. 137 (1995), that the criminal statute under which Dorsainvil had been convicted did not cover mere presence of a gun at the scene of a drug crime. Dorsainvil argued that *Bailey* rendered him actually innocent of "use" of a gun in connection with a drug offense.

Finding Dorsainvil's claim under *Bailey* to be worthy of consideration on the merits, we applied the savings clause of § 2255(e) and determined that the District Court had jurisdiction to hear his claim under its § 2241 jurisdiction even though he did not meet the gate-keeping requirements of § 2255(h). "If . . . it is a 'complete miscarriage of justice' to punish a defendant for an act that the law does not make criminal, thereby warranting resort to the collateral remedy afforded by § 2255," we concluded, "it must follow that it is the same 'complete miscarriage of justice' when the AEDPA amendment to § 2255 [the gate-keeping requirement] makes that collateral remedy unavailable. In that unusual circumstance, the remedy afforded by § 2255 [was] 'inadequate or ineffective to test the legality of [Dorsainvil's] detention.'" *Dorsainvil*, 119 F.3d at 251 (citing *Davis v. United States,* 417 U.S. 333, 346 (1974)).

5

Pollard argues that, under *Dorsainvil*, he should be heard on the merits of his claim that his sentence was illegally enhanced, on the ground that he was a career offender, when *United States v. Montanez* establishes as a matter of law that he was not a career offender. As the District Court's Report noted, *Dorsainvil* applies when there is a "claim of actual innocence coupled with the inability to have brought the claim before because of a change in the construction of the criminal statute by a court having the last word on the proper construction of the statute." Report at 9-10 (internal citation omitted). However, "*Dorsainvil* does not answer the question of whether this is the **only** kind of claim of actual innocence that so establishes the inadequacy of Section 2255." *Id.* (emphasis in original). In other words, we have yet to decide whether innocence of the sentence may also be grounds for applying the § 2255(e) savings clause.

As the District Court's Report noted, there are two principal aspects of Pollard's case that are analogous to *Dorsainvil*. "First, although petitioner is not claiming actual innocence of the federal crime for which he was convicted, he is making a claim of actual innocence of the sentence imposed, i.e., he is claiming that he is not 'guilty of' the career criminal enhancement, which is to say that he should not have been sentenced to 194 months (as permitted under the career criminal enhancement) but should only have been sentenced to approximately 140 months." Report at 11. Second, "the *Montanez* decision of the Court of Appeals for the Sixth Circuit[,] which construed the Ohio statute under which [Pollard] was convicted in 1983, did not occur until after [he] had exhausted his appeals and until after this Section 2255 motion had been decided. Hence, similar to *Dorsainvil*, [Pollard] could not have previously raised the claim he raises herein." *Id.*

6

Despite these two similarities, the District Court ultimately declined to apply the *Dorsainvil* exception to Pollard for multiple reasons. We rely on only one of those reasons– namely, Pollard has not shown that it would be a complete miscarriage of justice were we to decline to exercise § 2241 jurisdiction.[4] Because it was a plea agreement that determined his sentence, we cannot be certain what it would have been absent that agreement. As we cannot determine whether he would have been sentenced to a shorter term of imprisonment had *Montanez* already been decided, or whether the Government would now make the same plea agreement as it did in 2002 if we remanded under a nullified plea agreement, Pollard cannot demonstrate actual innocence of his sentence, regardless whether his career offender classification was in error.

For these reasons, we affirm the District Court in dismissing Pollard's petition for lack of subject matter jurisdiction. However, we do not foreclose the possibility that *Dorsainvil* could be applied to a petitioner who can show that his or her sentence would have been lower but for a change in substantive law made after exhaustion of the petitioner's direct and collateral appeals under § 2255.[5]

---

[4] The Report concluded that it "does not strike the court as unfair, let alone . . . a miscarriage of justice, that Petitioner cannot now bring this sentencing claim," since Pollard "bargained for the plea agreement, received benefits in exchange for the plea and knew fully well prior to entering the agreement that the Government sought the enhancement of Petitioner as a career criminal and that the court could certainly find him to be a career criminal." Report at 16.

[5] For example, in oral argument the Government noted that if a petitioner had been sentenced under the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. 924(e), in which a statutory minimum had applied rather than a bargained-for plea agreement dictating the sentence, a miscarriage of justice could result if there were a subsequent change of law regarding what constitutes a predicate crime for ACCA purposes. We agree that such a case would present a situation different to that faced by Pollard.